# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **FRANKLIN STATE BANK & TRUST CO.** | **CIVIL ACTION NO. 16-1150** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **CROP PRODUCTION SERVICES, INC.** | **MAG. JUDGE JOSEPH PEREZ-MONTES** |

## RULING

Pending before the Court is a Motion for Partial Summary Judgment [Doc. No. 50] filed by Defendant Crop Production Services, Inc. ("CPS"). CPS moves for summary judgment on Count II of Plaintiff Franklin State Bank & Trust Co.'s ("FSB") Complaint. FSB filed an opposition [Doc. No. 57]. CPS filed a reply memorandum [Doc. No. 62].

For the following reasons, the motion is DENIED.

## I. FACTS

During crop years 2014 and 2015, FSB and CPS were creditors of Thomas Dickerson ("Dickerson"), who engaged in farming operations in his individual capacity and through W & T Farms, LLC ("W & T") and Dickerson Agricultural Partnership ("DAP"). FSB and CPS entered into an Inter-Creditor Agreement with W & T as debtor and Dickerson as guarantor for the 2014 crop years. FSB and CPS entered into Inter-Creditor Agreements with DAP as debtor and Dickerson as guarantor for the 2014 and 2015 crop years.

The Agreements provided that FSB would fund the debtors' cash expenses up to a fixed amount and would receive a first lien position on all crops grown during a specified crop year. The Agreements also provided that CPS would furnish the debtors with chemicals, seed,

fertilizer, and services up to a fixed amount and would receive a second lien position on the debtor's crop for a specified crop year. Section 3 of the Agreements provided as follows:

> Creditors and Debtor further agree and understand, that all crops proceeds checks shall be made payable jointly to both Creditors and Debtor and that **once the line established by FSB has been paid in full**, FSB will relinquish to CPS any and all proceeds, including crop proceeds, government payments, crop insurance proceeds, etc. beyond the full payment of their line until such time that the line with CPS has also been paid in full.

[Doc. No. 50, Exhs. A & B (emphasis added)].

The Agreements further provided that crop buyers were to make all checks payable to the producer-debtor and to FSB and CPS. However, W & T and DAP also executed separate promissory notes and security agreements with FSB and CPS.

Pursuant to the Agreements, what normally happened is that upon sale of a debtor's crop, the buyer would issue a check for the sales price to the debtor, FSB, and CPS. The debtor would deliver the check to FSB. If the debtor owed a balance to FSB related to the crop, FSB would apply the check to the debtor's account with FSB. Once the debtor's obligation to FSB was satisfied, FSB would forward crop proceeds checks to CPS, and CPS would apply such to the debtor's obligation to CPS until CPS was fully paid.

Giving rise to the claims at issue, however, FSB relies on the testimony of its loan officer, Clark McCain ("McCain"), who had dealings with Dickerson and his farming entities. McCain avers that Dickerson presented seven checks, totaling $1,102,704.65, to FSB, but told McCain they were proceeds from the 2014 crop year. FSB had been paid in full for the 2014 crops, so McCain endorsed the checks and/or authorized Dickerson to turn them over to CPS. FSB later learned that the checks were allegedly for payment of 2015 crops. Dickerson and his farming entities had an outstanding loan balance for the 2015 crops.

2

## II. LAW AND ANALYSIS

Louisiana Civil Code article 2299 provides: "A person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it." Louisiana Civil Code article 2300 provides further: "A thing is not owed when it is paid or delivered for the discharge of an obligation that does not exist." Finally, Louisiana Civil Code article 2301 provides: "A thing is not owed when it is paid or delivered for discharge of an obligation that is subject to a suspensive condition."

"[T]he right to reimbursement conferred by article 2299 exists regardless of whether such payment was made knowingly or through error." *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 273 (5th Cir. 2003); *see also In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 329-30 (5th Cir. 2007) (quoting same); LA. CIV. CODE ANN. ART. 2299, cmt. (b) to 1995 Amendments ("Louisiana courts interpreting this provision have correctly ordered persons who received things or payments not owed to return them to the persons who made the delivery or the payment. Under Article 2299, as under Article 2301 of the Louisiana Civil Code of 1870, the person who receives a thing or a payment not owed, whether knowingly or through error, must restore it to the person from whom he received it.").

CPS argues that article 2299 does not apply. First, CPS contends that article 2299 does not apply because FSB did not owe a debt or mistakenly believe it owed a debt to CPS; thus, FSB made no payments to CPS. Second, the payers or person (or entities) for whom payment was made were indebted to CPS, and the amounts paid to CPS after the date due under the promissory notes cannot be characterized as "things not due." Finally, CPS argues that CPS erroneously relies on article 2301 because the Inter-Creditor Agreements did not expressly

3

declare any suspensive condition was created, and the language does not compel any such construction. Accordingly, CPS argues that there was no suspensive condition, and FSB has no right to recover for payment of a thing not due.

FSB responds that its erroneous endorsement of and relinquishment of payments to CPS was subject to the suspensive condition that it be paid in full, as the highest ranking creditor, under the Inter-Creditor Agreements. Regardless of the due date in the separate promissory notes, FSB argues that the Inter-Creditor Agreements among FSB, CPS, and the debtors established the suspensive condition. Because there is a factual dispute as to the amounts owed and attributable to crop years 2014 and 2015, FSB argues that it has raised a genuine issue of material fact for trial whether a debt was owed to CPS under article 2301 at the time of delivery and payment.

In this case, there is no doubt that Dickerson and his farming entities owed FSB and CPS, as he did many others. Thus, CPS was entitled to payment from the crop proceeds under the Agreements and promissory notes. However, to accept CPS's arguments that no suspensive condition existed, the Court must ignore the language of the very Agreements to which CPS was a party.

The Court has considered the cases cited by both parties, both of which are persuasive at best, not precedential. In the *Soileau v. ABC Ins. Co.*, 2012-1301 (La. App. 3 Cir. 3/5/03); 844 So.2d 108, the Louisiana Third Circuit Court of Appeals did agree with the trial court that an "essential element of Art. 2299" is a "direct relationship of two parties interacting, one as the giver of the payment or thing and the other as the recipient of the payment." *Id.* at 110. However, that case was factually quite distinguishable. The case involved an accountant's theft

of funds from one client and the transfer of those funds to another client. There was no relationship or agreement of any kind between the two clients, and both clients were innocent of any wrongdoing. Rather, the connection between the two clients was the accountant, whose actions in forging checks caused the loss to the first client. The Court is not persuaded that the application of the principles cited in *Soileau* should be extended beyond its facts.

In this case, there **was** a relationship between the parties, such that they had actually entered into joint creditor agreements with Dickerson and the entity debtors. Further, in the Court's view there was a direct transfer to CPS from FSB. Dickerson went to FSB, first, as required by the Agreements. It was only with FSB's endorsement on some of the checks and with its permission on the others that Dickerson then took the checks on to CPS. This is not a case where an entity stood between the taking of the funds and the delivery, but a case where FSB itself endorsed or agreed to the delivery, without which, Dickerson could not proceed to provide the payments to CPS under the Agreements.

More persuasive is the United States Court of Appeals for the Fifth Circuit in *In the Matter of Ark-La-Tex Timber Co., Inc. v. Gen. Elec. Capital Co.*, 477 F.3d 295 (5th Cir. 2007). In that case, two creditors, Peoples State Bank and General Electric, held first lien positions with regard to security interests in certain non-titled movables of Ark-La-Tex and its two related companies, Alba and Pearl. Peoples State Bank held the superior position with regard to the non-titled movables of Ark-La-Tex, while General Electric held the superior position with regard to the non-titled movables of Alba and Pearl. Ark-La-Tex declared bankruptcy, and the bankruptcy judge allowed it to purchase the membership interests of Alba and Pearl. The bankruptcy judge then ordered all the assets of all three entities sold together, despite the fact

that they could not be consolidated when Alba and Pearl were not in bankruptcy. At the conclusion of the sale, the auction proceeds were then paid in full to Peoples State Bank as the superior lien holder for Ark-La-Tex. However, the district court ordered, and the Fifth Circuit affirmed the order, that the amounts attributable to the sale of the non-titled movables of Alba and Pearl had to be "restored" to General Electric as the superior lien holder as to those entities. As the Fifth Circuit explained, Peoples State Bank had "received a windfall" of the amounts attributable to Alba and Pearl which constituted a thing not owed to it." *Id.* at 304.

While CPS offers criticism of the *Ark-La-Tex* case, the Court has, again considered it only persuasive with regard to the idea that a superior lien holder can have payments restored it as payments of a thing not due. More importantly in this case, the Court need not address whether the auctioneer was an agent in the *Ark-La-Tex* case, or there was some other factual basis for that decision. In this case, the parties themselves agreed as to when payment would be due. The language of the Agreements created a suspensive condition that CPS was aware of and agreed to. If FSB can prove at trial that the suspensive condition was not met, then the "thing," i.e., the crop proceeds payments, were not due to CPS. FSB, by endorsing and/or granting permission to Dickerson on his own behalf and as agent of his entities, caused payments to be made to CPS, and those payments should be restored if FSB meets its burden. Reading *Ark-La-Tex,* along with the Agreements, the Court finds that there is a genuine issue of material fact for trial as to whether FSB can prevail on Count II.

**III. CONCLUSION**

For the foregoing reasons, the Motion for Partial Summary Judgment is DENIED.

MONROE, LOUISIANA, this 3rd day of July, 2018.

                                        _____
                                                TERRY A. DOUGHTY
                                        UNITED STATES DISTRICT JUDGE